IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, f/k/a MASHA ALLEN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALAN HESKETH, et al. | : | NO. 13-4935 |

<u>MEMORANDUM</u>

Dalzell, J.                                                                                           April 25, 2014

      Plaintiff Jane Doe seeks statutory redress under 18 U.S.C. § 2255 for her victimization in the child-porn trade when she was a minor by suing a putative class of men convicted of illegally possessing her image, including defendants Dan W. Joachim, Mayer Finkelstein and Charles Lindauer.  These three defendants each pled guilty in their respective Districts to possession of child pornography after which the Department of Justice sent Doe a notice that her image was among those in each defendant's possession.

      Before us now are Joachim, Finkelstein and Lindauer's individual motions to dismiss Doe's amended complaint which we will consider together because they make identical arguments,[1] <u>i.e.</u>, that we lack personal jurisdiction over each defendant; each defendant is not an appropriate representative of the putative defendant class; the statute under which Doe sued is void for vagueness under the Fifth Amendment; and the complaint impermissibly seeks punitive damages under a statute that permits recovery of actual damages alone.  Doe opposes the three defendants' motions and seeks jurisdictional discovery to show that we have jurisdiction over these defendants.

---

[1] <u>See</u> <u>Patchen v. McGuire</u>, 2012 WL 4473233 at *3 (E.D.Pa. Sept. 27, 2013) (Yohn, J.) (addressing collectively individual motions to dismiss for lack of personal jurisdiction because the motions were "largely duplicative").

For the reasons detailed below, we will grant these defendants' motions to dismiss on the basis of personal jurisdiction and accordingly we will not reach the Rule 12(b)(6) questions.[2]

## I.    **Factual and procedural background**

### A.    The Parties

From the age of five Doe was filmed being repeatedly raped and sexually abused by her then-adoptive father, defendant Matthew Mancuso, who then distributed those images over the Internet.  First Amended Complaint ("FAC") at 2.  Most of these acts took place in Mancuso's home in the Commonwealth of Pennsylvania, but others were filmed during their annual trips to Disney World -- including a widely distributed series through which Doe became known as "Disney World Girl."  Id. ¶ 12.  Mancuso distributed in secret online chatrooms some two hundred images of Doe in exchange for pictures and videos of other children being sexually abused.  Id. ¶ 13.

Doe alleges that the named defendants and others "conspired with each other, and with members of the class, to share and distribute these and other illegal child-abuse images, largely by means of the so-called 'darknet,' a collection of secure websites, online chatrooms, bulletin-board sites, and peer-to-peer file-sharing computer networks that communicate via the Internet but are specifically designed to conceal the participants' personal identifying information."  Id. at 4.  She further alleges that, because the images are illegal, defendants "operated under an agreement to protect each other's anonymity [by] communicating with each other remotely under

---

[2] "As a general rule, when the court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint."  5B Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2013) (citing Season-All Indus., Inc. v. Turkiye Sise Ve Cam Fabrikalari, A.S., 425 F.2d 34, 38 (3d Cir. 1970).

2

fictitious usernames." Id.

With respect to those moving to dismiss, Doe alleges that defendant Joachim pled guilty in 2012 to receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). Id. at ¶ 30. As part of the conduct of his offense, Doe alleges that Joachim "communicated with other possessors and distributors of child pornography by means of the Internet," using a fictitious screen name to advertise, distribute and receive illegal images -- including of Doe -- through "websites, chatrooms, and other modes of online communication." Id. at ¶ 31. Joachim's last known address before his incarceration was in Metairie, Louisiana. Id.

As to defendant Finkelstein, Doe alleges that in 2007 he pled guilty to possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Id. ¶ 57. Doe alleges that Finkelstein "communicated with others via the Internet to distribute and receive images of child sexual abuse." Id. ¶ 58. Doe's image was among the 14,000 still images and 324 videos that federal agents found on his home and law-office computers. Id. His last known address prior to his incarceration was New Orleans, Louisiana.

Doe alleges that defendant Lindauer pled guilty in 2010 to one count of transporting child pornography in violation of 18 U.S.C. §§ 2252A(a)(1) and 2252A(b)(1)[3] and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252a(a)(5)(B)[4] and 2252A(b)(2). Id. at ¶ 42. He was sentenced in 2011 to nine years' imprisonment. Id. Doe alleges that Lindauer "used a particular type of peer-to-peer file-sharing software that is commonly used by child pornographers to conceal their identifying information when interacting with one another

---

[3] Doe's amended complaint identifies the statute as "22525A(b)(1)" which we believe refers to 18 U.S.C. §2252A(b)(1). See FAC ¶ 42.
[4] We presume Doe intended to cite 18 U.S.C. §2252A(a)(5)(B). Id.

and trading illegal images." Id. ¶ 43.  She further alleges that, using the pseudonym "ForVicky,"

Lindauer received and distributed hundreds of digital pictures and videos, among them

depictions of the rape and sexual abuse of small children including Doe.  Id.  Lindauer's last

known address before his incarceration was in Charlottesville, Virginia.  Id. ¶ 44.

   B. <u>Procedural History</u>

   Doe brings this lawsuit under 18 U.S.C. § 2255, which is known as "Masha's Law" and

named after this plaintiff.  Id. at 2.  The statute provides in relevant part:

> Any person who, while a minor, was a victim of a violation of [a
> predicate offense] and who suffers personal injury as a result of
> such violation, regardless of whether the injury occurred while
> such person was a minor, may sue in any appropriate United States
> District Court and shall recover the actual damages such person
> sustains and the cost of the suit, including a reasonable attorney's
> fee. Any person as described in the preceding sentence shall be
> deemed to have sustained damages of no less than $150,000 in
> value.

18 U.S.C. § 2255(a).  Doe rehearses that any plaintiff who establishes a claim under Masha's

Law may recover a minimum of $150,000 in damages from each defendant "[a]s a punitive

deterrent to such crimes[] and in recognition of both the magnitude of the damages resulting to

the victim and the difficulty of precisely calculating the amount of such damages."  FAC at 5.

Doe seeks "at least" the $150,000 in statutory minimum damages from each member of the

putative class.  Id.

   The United States Department of Justice ("DOJ") identified each of the named

defendants as having "received, possessed, and/or distributed one or more of the illicit images"

Mancuso created of Doe and each defendant was convicted of a predicate offense to 18 U.S.C. §

2255. Id. ¶ 15.  Under the DOJ's Victim Notification System, Doe learned of each defendant

4

"who illegally possessed and/or distributed" one or more of the images of her that Mancuso created.  Id.  ¶ 16.  To date, Doe has received over 2,000 such notifications.  Id.

Because these images continue to circulate and Doe suffers a severe deprivation of her privacy as a result, she changed her name and took steps to shield her address and personal information before filing this lawsuit.  In January of 2014, we granted her unopposed motion to proceed under a pseudonym.  See January 29, 2014 Order.

On February 4, 2014 Doe filed her first amended complaint against thirteen named defendants whom she sued individually and as class representatives under 18 U.S.C. § 2255(a).  Defendants Joachim and Finkelstein each filed motions to dismiss on March 14, 2014 and defendant Lindauer filed his motion to dismiss a week later.  Doe responded to the motions on April 7, 2014.

## II.   Discussion

### A.   Legal Standard for Motion to Dismiss for Lack of Personal Jurisdiction

A district court considering a challenge to its jurisdiction over a defendant has "considerable procedural leeway in choosing a methodology for deciding the motion."  5B Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2013).  In ruling on a motion under Rule 12(b)(2) we must accept all of the plaintiff's allegations as true and accept disputed facts in the plaintiff's favor.  See Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); see also Fed. R. Civ. P. 12(b)(2) and (6).

"But once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper."  Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996).  As our Court of Appeals explained in Time Share Vacation Club v. Atlantic Resorts, Ltd, 735 F.2d 61 (3d Cir. 1984), "[a] Rule 12(b)(2)

5

motion. . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether <u>in personam</u> jurisdiction actually lies." <u>Id.</u> at 66 n.9.  The plaintiff must respond with "competent evidence" and "actual proofs," and may not "rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of <u>in personam</u> jurisdiction."  <u>Id.</u>

The district court may "receive and weigh" any relevant matter the parties submit to determine jurisdictional facts.  5B Wright & Miller at § 1351; <u>see</u> <u>also</u> <u>Metcalfe v. Renaissance Marine, Inc.</u>, 566 F.3d 324 (3d Cir. 2009).  The court may hold an evidentiary hearing, but when it restricts its review of the Rule 12(b)(2) motion solely to affidavits and other written evidence, the plaintiff need only make a <u>prima facie</u> showing.  5B Wright & Miller at § 1351  (citing <u>IMO Industries, Inc. v. Kiekert AG</u>, 155 F.3d 254 (3d Cir. 1998).  But the plaintiff must still prove personal jurisdiction by a preponderance of the evidence.  <u>Carteret Sav. Bank, FA v.  Shushan</u>, 954 F.2d 141, 142 (3d Cir. 1992).

A court must analyze questions of personal jurisdiction on a defendant-specific and claim-specific basis.  <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 95 n.1 (3d Cir. 2004) (citing <u>Calder v. Jones</u>, 465 U.S. 783, 790 (1984)).  Each defendant's contact with the forum state must be assessed individually.  <u>Calder</u>, 465 U.S. at 790.

B.      <u>Alternative Tests to Establish Personal Jurisdiction</u>

A district court's jurisdiction over a foreign defendant rests on a two-part analysis that considers the reach permitted by the law of the state in which the court sits, <u>see</u> Fed.R.Civ.P. 4(k), and the due process requirement for "certain minimum contacts" between the defendant and the forum state so as not to "offend traditional notions of fair play and substantial justice."

6

International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

"When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the [Supreme] Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction," Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (citing Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).  Specific jurisdiction exists where the plaintiff establishes "with reasonable particularity sufficient contacts between the defendant and the forum state."  Provident Nat. Bank v. California Fed. Sav. & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987) (internal citation omitted). In such cases, Pennsylvania's long-arm statute provides that we may exercise jurisdiction over nonresident individuals "to the fullest extent allowed under the Constitution of the United States and [our jurisdiction] may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."  42 Pa. Cons. Stat. Ann. § 5322(b) (emphasis supplied).[5]

### 1.     The Minimum Contact Requirement

The traditional minimum contact analysis derived from Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), grants a district court personal jurisdiction over a defendant who "purposefully direct[s] his activities at residents of the forum [when] the litigation results from

---

[5] When the cause of action does not arise out of a nonresident defendant's activities in the forum state, due process is not offended "when there are sufficient contacts" between the forum state and the nonresident that are continuous and systematic, thereby creating general jurisdiction over the defendant.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). In such cases, Pennsylvania law provides that we may exercise jurisdiction over a nonresident individual who is present or domiciled in the Commonwealth when process is served or who consents to Pennsylvania jurisdiction.  42 Pa. Cons. Stat. Ann. § 5301(a)(1); see also Patchen, 2012 WL 4473233 at *3 n. 5.  Doe does not allege continuous and systematic contacts between the defendants and Pennsylvania, so we need not embark on an analysis of general jurisdiction.

alleged injuries that arise out of or relate to those activities." Id. at 472 (internal quotations omitted); see also Metcalfe, 566 F.3d at 334.  If those requirements are met, the court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted).   Under this traditional test, a defendant purposefully directs his activities at the forum state when he "avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (cited in Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products, 75 F.3d 147, 150 (3d Cir. 1996)).

      2.      "Effects" Test

As an alternative to minimum contact through one's presence within the state, our Court of Appeals adopted the so-called "effects" test the Supreme Court first articulated in Calder, supra.  In Calder, a California-based entertainer sought jurisdiction over two Florida-based journalists for an allegedly libelous story drawn from California sources where the brunt of the harm -- the entertainer's emotional distress and harm to her professional reputation -- occurred in California. Calder, 465 U.S. at 789-90.  The Supreme Court concluded that "California is the focal point both of the story and the harm suffered.  Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California," id. at 789, because their intentional and allegedly tortious actions were expressly aimed at one living in California.

Under the "effects" test, a court has personal jurisdiction if the plaintiff can show "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum. .

8

. ; [and] (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." IMO Indus., 155 F.3d at 265-66.

As our Court of Appeals explained in Marten v. Godwin, 499 F.3d 290 (3d Cir. 2007),

> The effects test and traditional specific jurisdiction analysis are different, but they are cut from the same cloth. Just as the standard test prevents a defendant from "be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," Burger King, 471 U.S. at 475. . ., the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state.

Id. at 297. See also Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455 n.6 (3d Cir. 2003) (stating that the effects test is an alternative to the minimum contact analysis for specific jurisdiction if the defendant "expressly aimed his tortious conduct at the forum" and where the intentionality requirement is the "key" component for jurisdiction under either the "minimum contacts" analysis or the "effects" test).

The "expressly aimed" element constitutes the threshold. Only if we cross that threshold need we consider the other two elements. Marten, 499 F.3d at 297. This standard is exacting. To meet it, the plaintiff must show that "the defendant knew that the plaintiff would suffer the brunt of the harm . . . in the forum, and [must] point to specific activity indicating that the defendant expressly aimed [his] tortious conduct at the forum." IMO Indus., 155 F.3d at 266. In Remick v. Manfredy, 238 F.3d 248 (3d Cir. 2001), our Court of Appeals dismissed a defamation claim for want of in personam jurisdiction. There, defendants made defamatory statements to plaintiff's professional community and wrote a defamatory letter that was read by plaintiff's Pennsylvania coworkers. But plaintiff could not show that the letter was targeted at anyone in Pennsylvania besides the plaintiff or that the Commonwealth had a "unique relationship" with

9

plaintiff's colleagues.   The court similarly found no jurisdiction in <u>Marten</u> -- even assuming the truth of the allegations and that plaintiff felt the brunt of the harm in Pennsylvania -- because the plaintiff failed to allege "any specific facts showing a deliberate targeting of Pennsylvania." <u>Marten</u>, 499 F.3d at 298.

As our Court of Appeals explained, "the effects test asks whether the plaintiff felt the brunt of the harm in the forum state, but it also asks whether the defendants <u>knew</u> that the plaintiff would suffer the harm there and whether they <u>aimed</u> their tortious conduct at that state." <u>Id.</u> at 299 (emphasis in original).

3.     The Sliding Scale Approach

As the Internet has grown exponentially, courts have struggled to derive personal jurisdiction tests that satisfy the due process requirement for the defendant's minimum contact with the forum state while also offering plaintiffs redress.   At issue for Internet-based claims is whether operation of a commercial Web site accessible in the forum state is enough to support specific jurisdiction or "whether there must be additional evidence that the defendant has 'purposefully availed' [himself] of the privileges of engaging in activity in that state."   <u>Toys "R" Us</u>, 318 F.3d at 451.   The purposeful availment requirement balances the constitutional imperatives of protecting defendants from being haled into court based solely on attenuated contacts while providing injured parties the means to sue a non-resident defendant for harms directed toward -- and through a substantial relationship with -- the forum state.   <u>See</u> <u>Burger King</u>, 471 U.S. at 475.

In <u>Toys "R" Us v. Step Two, S.A.</u> our Court of Appeals endorsed the sliding-scale approach first articulated in <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119

(W.D.Pa. 1997).  Under <u>Zippo</u>, a court has personal jurisdiction when an Internet site offers

commercial interactivity and the claim relates to, or arises from, use of the Web site, but not

where a defendant only posted information on a passive site.  The court concluded that "the

likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to

the nature and quality of commercial activity that an entity conducts over the Internet."  <u>Zippo</u>,

952 F. Supp. at 1124.

 <u>Zippo</u> identified three types of Internet Web presences and their effects on personal

jurisdiction:

> At one end of the spectrum are situations where a defendant clearly
> does business over the Internet. If the defendant enters into
> contracts with residents of a foreign jurisdiction that involve the
> knowing and repeated transmission of computer files over the
> Internet, personal jurisdiction is proper. At the opposite end are
> situations where a defendant has simply posted information on an
> Internet Web site which is accessible to users in foreign
> jurisdictions. A passive Web site that does little more than make
> information available to those who are interested in it is not
> grounds for the exercise [of] personal jurisdiction. The middle
> ground is occupied by interactive Web sites where a user can
> exchange information with the host computer. In these cases, the
> exercise of jurisdiction is determined by examining the level of
> interactivity and commercial nature of the exchange of information
> that occurs on the Web site.

<u>Id.</u> (internal citations omitted).

 Our Court of Appeals concluded in <u>Toys "R" Us</u> that "the mere operation" of an

interactive Web site failed to subject its operator "to jurisdiction anywhere in the world" -- and,

specifically, in Pennsylvania.  <u>Toys "R" Us</u>, 318 F.3d at 454.  "Rather, there must be evidence

that the defendant 'purposefully availed' [himself] of conducting activity in the forum state, by

directly targeting [the] web site to the state, knowingly interacting with residents of the forum

state via [the] web site, or through sufficient other related contacts."  <u>Id.</u>

11

4.      Co-Conspirator Jurisdiction

Under certain circumstances district courts in this Circuit have adopted Pennsylvania's "co-conspirator jurisdiction" under which "[t]he court imputes the contacts of the 'resident' co-conspirator over whom it has jurisdiction to the 'foreign' co-conspirator to see if there are sufficient contacts to exercise jurisdiction over the latter." Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 846 F. Supp. 374, 379 (E.D.Pa. 1994) (Ditter, J.). The availability of the conspiracy theory of jurisdiction is a question of state law, Miller Yacht, 384 F.3d at 102 n.8., but our Court of Appeals has not adopted this theory of jurisdiction.

For a court to have co-conspirator jurisdiction over a foreign defendant, the plaintiff must allege that substantial acts in furtherance of the conspiracy occurred within the forum state and that the foreign defendant was, or should have been, aware of them. Massachusetts School of Law, 846 F.Supp. at 379-380. "Merely belonging to a civil conspiracy does not make a member subject to the jurisdiction of every other member's forum." Id. at 379. See also Commonwealth ex rel. Pappert v. TAP Pharma. Prod., Inc., 868 A.2d 624, 632 (Pa. Commw. 2005) ("[B]are assertions of a conspiracy connection are insufficient to justify the exercise of personal jurisdiction").

In short, a plaintiff must plead the defendant's involvement with particularity. Aluminum Bahrain B.S.C. v. Alcoa Inc. 866 F. Supp. 2d 525 (W.D.Pa. 2012). Courts have recognized co-conspirator jurisdiction where the plaintiff alleges specifically how co-conspirators related to each other in order to make a prima facie showing of personal jurisdiction. See, e.g. Arrington v. Colortyme, Inc., 2013 WL 5230728 at *9-10 (W.D.Pa. Sept.17, 2013).

Though not, strictly speaking, a "minimum contacts" case involving in personam jurisdiction, our Court of Appeals's decision two weeks ago in United States v. Auernheimer,

2014 WL 1395670, No. 13-1816 (Apr. 11, 2014), is nevertheless instructive.  Judge Chagares,

for the Court, addressed a prosecution under the Computer Fraud and Abuse Act ("CFAA"), 18

U.S.C. § 1030, where the defendant claimed that venue was unconstitutionally improper in the

face of the Government's contention that about 4,500 of the email addresses defendant

unlawfully obtained "belonged to New Jersey residents, thereby satisfying the 'locus of the

effect[s]' consideration."  Id. at *7 (referring to the Second Circuit's approach in United States v.

Reed, 773 F.2d 447, 481 (2d Cir. 1985)).  The Court held that the CFAA prosecution should not

have proceeded  in New Jersey notwithstanding the 4,500 New Jersey victims.

On Doe's theory, our Court of Appeals's analysis in Auernheimer would make no sense.

Specifically, the contention she presses for "minimum contacts" purposes would apply equally to

the venue contentions the Government made in Auernheimer.  Thus, while not constituting a

square holding as to the issue the three defendants raise here, it seems to us that we cannot ignore

Auernheimer's teaching where, as here, criminal and civil claims intersect.

C.     Application

1.     Joachim

Defendant Joachim pled guilty to receiving or distributing visual depictions of a minor

engaged in sexually explicit conduct under 18 U.S.C. § 2252(a)(2).  Joachim asserts that we do

not have personal jurisdiction over him either under a theory of general jurisdiction or specific

jurisdiction.  MTD at 5.  He was not in Pennsylvania when process was served or domiciled here

then and he has not consented to service.  Id.  He contends that his actions do not meet the

"effects" test because Doe does not allege that he expressly aimed his receipt or distribution of

child-porn images at Pennsylvania.  Id. at 7.

13

In support of her response, Doe states that Joachim has "sufficient minimum contacts with Pennsylvania because he intentionally conspired to solicit, receive, and trade images created in Pennsylvania, all of which depict the abuse of [Doe], a Pennsylvania resident, by another Pennsylvania resident and co-conspirator." Resp. at 8. She contends that, because the images of her abuse are illegal, Joachim could only obtain them "by actively seeking them out and by conspiring" to share and distribute them among like-minded others "while operating under an agreement to protect each other's anonymity by communicating with each other remotely under fictitious usernames." Id. at 11-12.

In addition to the allegations in her complaint, Doe states that she was a Pennsylvania resident from 1998 -- when Mancuso adopted her -- to December of 2004 -- when she was taken to Georgia by her adoptive mother for two-and-a-half years. Decl. at ¶¶ 1, 4, 5. She is currently a Pennsylvania resident. Id. at ¶ 5. She also includes Joachim's Judgment and Probation/Commitment Order and the factual basis of his plea. Resp. Ex. 2 and 3. According to the factual basis for Joachim's plea, the Government stood ready to prove that on May 26, 2010 and July 6, 2010, FBI agents executed warrants to search Joachim's home computers. Resp. Ex. 3 at 2. Further, the Government had evidence that Joachim "accessed numerous websites that contained, and offered for download, child pornography, and that he knowingly received and possessed images of child pornography." Id. The images and videos included children ranging from six or eight months to prepubescent children, and forensic tests established at least some were of real, identifiable children. Id. at 3.

Doe urges that we find personal jurisdiction because she alleges a substantial nexus with the Commonwealth of Pennsylvania in that Joachim downloaded images created in Pennsylvania by a Pennsylvania resident defendant (Mancuso), depicting abuse of a Pennsylvania resident, and

those images were placed into Internet circulation by the Pennsylvania defendant. Resp. at 25.

She argues we may apply the Zippo sliding scale because "these illegal online marketplaces

typically required that a would-be user prove himself by uploading and sharing images of child

sexual abuse." Id. at 17, FAC ¶ 10. She also argues that we have personal jurisdiction through

the Calder "effects" test because injury to a child in her forum state is the foreseeable result of

child-porn distribution and possession. Id. at 21.[6] Further, she contends that Joachim (who was

indicted in August of 2010 for images received around May of 2010), knew or should have

known that the images he possessed were made in Pennsylvania because defendant Mancuso was

arrested in 2003 and Doe appeared on Oprah Winfrey's television program in January of 2006

and testified before Congress in May of that year. Id. at 22. She states that Joachim's "attempt

to evade jurisdiction. . . makes a mockery of the fundamental principles of fairness on which

personal jurisdiction jurisprudence is based." Id. at 7.

    We nevertheless cannot hold that we have personal jurisdiction over Joachim.

Jurisdiction is proper when "the contacts proximately result from actions by the defendant

himself that create a 'substantial connection' with the forum state," not from attenuated contacts

or the unilateral activity of someone else. Burger King, 471 U.S. at 475 (emphasis in original).

Despite Doe's contention that Joachim knew or should have known he was inflicting harm on a

Pennsylvania resident, it is well-established that "foreseeability of causing injury in another

[s]tate . . . is not a 'sufficient benchmark' for exercising personal jurisdiction." Id. at 474

---

[6] Doe also offers a "totality of the circumstances" test for personal jurisdiction based on a
decision rendered in the Eastern District of Virginia, Verizon Online Services, Inc. v. Ralsky,
203 F. Supp. 2d 601 (E.D.Va. 2002). In that case, the Court reviewed Internet-based cases in
other Circuits and Districts to compose a multi-factor test that found personal jurisdiction over
senders of commercial unsolicited bulk emails who purposefully availed themselves of Verizon
servers in Virginia for their spam. We decline to adopt the Virginia district court's test.

(emphasis in original) (citing <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 295

(1980)).  There is simply no evidence of any contact between Joachim and the Commonwealth of

Pennsylvania under any accepted test.

     Notably absent from Doe's allegations and the additional materials before us is any

indication that Joachim accessed child-porn sites in Pennsylvania or exchanged child-porn with

anyone in the Commonwealth -- in short, that he purposely availed himself of this forum under

the traditional <u>Hanson</u> test.  And although Joachim's actions unquestionably had an impact upon

Doe in Pennsylvania -- where she continues to feel the brunt of the harm he inflicted -- there is

no indication that <u>Joachim</u> expressly aimed any action toward the Commonwealth -- no emails,

no image distribution, nothing.  Doe has thus failed to show specific activity that can be fairly

construed as showing that Joachim expressly aimed tortious conduct at this forum, as the <u>Calder</u>

effects test requires.

     Likewise, the <u>Zippo</u> sliding scale requires <u>some</u> evidence of commercial interactivity

with the forum state as where the <u>Zippo</u> defendants solicited subscribers and entered into

contracts to furnish services to Pennsylvania customers.  <u>Zippo</u>, 952 F. Supp. at 1126.  Even

accepting as true Doe's allegations that Joachim and other consumers of child-porn entered into

quasi-commercial exchanges for mutual benefit, any links from Joachim in Louisiana back to

Pennsylvania through Mancuso are at best conjectural.  Nor does Doe allege shared use of a

specific Internet site.  There is no evidence as to exactly when Joachim accessed Doe's image

before his 2010 arrest, but that time had to be distant from Mancuso's actions in view of

Mancuso's arrest seven years earlier.

     Finally, while we entertain no doubt about Doe's assertion that users of child-porn shield

each other and act covertly, Doe does not allege any facts with sufficient  particularity for us to

find that Joachim, in Metairie, Louisiana, conspired in any way with Mancuso in the Commonwealth of Pennsylvania.

          2.    <u>Finkelstein</u>

Defendant Finkelstein pled guilty to possession of child pornography in 2007 under 18 U.S.C. §2252(a)(4)(B).  His motion to dismiss is identically worded to Joachim's and asserts that we do not have personal jurisdiction over him either under a theory of general jurisdiction or specific jurisdiction.  MTD at 5.  He was not in Pennsylvania when process was served or domiciled here then and he has not consented to service.  <u>Id.</u>  He contends that his actions do not meet the "effects" test because Doe does not allege that he expressly aimed his receipt or distribution of child-porn images at Pennsylvania.  <u>Id.</u> at 7.

As she did with Joachim, Doe responds that Finkelstein has "sufficient minimum contacts with Pennsylvania because he intentionally conspired to solicit, receive, and trade images created in Pennsylvania, all of which depict the abuse of [Doe], a Pennsylvania resident, by another Pennsylvania resident and co-conspirator."  Resp. at 8.  She repeats her contention that, because the images of her abuse are illegal, Finkelstein could not have obtained the images found on his computer except by seeking them out and becoming trusted by someone who illegally possessed them.  <u>Id.</u> at 13.  "[B]ecause all of the images depicting [Doe's] abuse . . . originated with Mancuso, a Pennsylvania resident, [d]efendant Finkelstein could not have obtained them without contacting, and becoming trusted by, that Pennsylvania resident or one of his co-conspirators who possessed the images."  <u>Id.</u>; FAC ¶¶ 11-13.

In addition to the allegations in her complaint and her Declaration, Doe includes the factual basis for Finkelstein's plea and the transcript of his 2008 sentencing.  Resp. Ex. 3 and 4.

Had Finkelstein gone to trial the Government would have shown that the FBI searched his New Orleans residence and law office on May 14, 2007 pursuant to search warrants based on probable cause.  Resp. Ex. 3 at 1.  Agents would have testified that they recovered computers, DVDs and CDs at both locations.  Id. at 2.  The Government would have established that Finkelstein searched for, downloaded and saved more than 600 child-porn images and videos.[7]  Id. Finkelstein told the agents that he subscribed to Internet child pornography Web sites on three occasions, most recently in April of 2007.[8]  Id.  At the sentencing hearing, the Government's attorney described Finkelstein as a "purchaser, downloader, and collector of images of children being sexually victimized."  Ex. 4 at 8.

Doe urges that we find personal jurisdiction over Finkelstein because he established minimum contacts with Pennsylvania when he "interacted with an anonymous, geographically dispersed online community for the purpose of trading child pornography and solicited, received, and downloaded illegal and privacy-invading images of" Doe.  Resp. at 19.  She argues we may apply the Zippo sliding scale because Finkelstein's online activities were "highly interactive and commercial in nature."  Id. at 18.  She also contends that we have personal jurisdiction through the Calder "effects" test because injury to a child in her forum state is the foreseeable result of child-porn distribution and possession.  Id. at 21-22.  Further, she contends  that Finkelstein (who was arrested in 2007 and sentenced in 2008) knew or should have known that the images he possessed were made in Pennsylvania because defendant Mancuso was arrested in 2003 and Doe

---

[7] At the sentencing hearing the Government's attorney stated that Finkelstein was convicted of possessing 14,183 images and 324 videos depicting sexual abuse of children.  Resp. Ex. 4 at 6.

[8] At the sentencing hearing the Government's attorney stated that Finkelstein had attempted to access one site six times.  Resp. Ex. 4 at 7.

appeared on <u>Oprah</u> in January of 2006 and testified before Congress in May of 2006.  <u>Id.</u> at 23.
"[I]t seems quite likely that members of these communities would have discussed the fact that
[d]efendant Mancuso . . . had been arrested."  <u>Id.</u> at 24.

As with Joachim, Doe alleges a substantial nexus between Finkelstein and the
Commonwealth of Pennsylvania because Finkelstein downloaded illegal images Mancuso
created in Pennsylvania, depicting abuse of a Pennsylvania resident, and Mancuso necessarily
placed those images into Internet circulation in Pennsylvania.  <u>Id.</u> at 26.[9]

We decline to find personal jurisdiction over Finkelstein because there is no evidence of
any contact between Finkelstein and the Commonwealth of Pennsylvania under any accepted
test.  Doe does not claim that Finkelstein purposely availed himself of this forum by accessing
child-porn sites in Pennsylvania or exchanged child-porn with anyone in the Commonwealth.
Nor is there any evidence that Finkelstein expressly aimed any action toward the
Commonwealth.

As for the <u>Zippo</u> sliding scale, Doe contends that Finkelstein's online searches were
commercial and interactive, but the evidence before us is that Finkelstein was a consumer, not a
purveyor.  Certainly there are no allegations of contracts with Pennsylvania residents.  <u>See</u>
<u>Zippo</u>, 952 F. Supp. at 1126.  <u>Zippo</u> counsels that users of interactive Web sites who exchange
information occupy a "middle ground" where "the exercise of jurisdiction is determined by
examining the level of interactivity and commercial nature of the exchange of information that
occurs on the Web site."  <u>Id.</u> at 1124.  Nothing in Finkelstein's sentencing hearing or contained
in the factual basis of his plea suggests he interacted online except as a viewer of child-porn.

_____

[9] Here, too, Doe offers the multi-factor "totality of the circumstances" test for personal
jurisdiction devised in <u>Verizon Online Services, Inc. v. Ralsky</u>, 203 F. Supp. 2d 601 (E.D.Va.
2002), which we decline to adopt.

Accepting as true Doe's allegations that Finkelstein entered into quasi-commercial exchanges with other child-porn collectors for their mutual benefit, any links to Pennsylvania resident Mancuso are as fortuitous here as in Joachim's case.  Doe does not allege shared use of a specific Internet site.  There is no evidence when Finkelstein accessed Doe's image before his arrest, but once again the facts before us suggest it was years after Mancuso's 2003 arrest.

Finally, while we do not quibble with Doe's assertion that users of child-porn shield each other and act covertly, she does not allege any facts with sufficient particularity for us to find that Finkelstein in New Orleans, Louisiana, conspired in any way with Mancuso in the Commonwealth of Pennsylvania.

### 3. Lindauer

Defendant Lindauer pled guilty in 2010 to one count of transporting child pornography and one count of possession of child pornography.  18 U.S.C. §§2252A(a)(1), (b)(1) and (a)(5)(B).  His motion to dismiss is cognate with the others.  Lindauer asserts that we do not have personal jurisdiction over him either under a theory of general jurisdiction or specific jurisdiction.  MTD at 5.  He was not in Pennsylvania when process was served or domiciled in Pennsylvania and he has not consented to service.  Id.  He contends that his actions do not meet the "effects" test because Doe does not allege that he expressly aimed his receipt or distribution of child-porn images at Pennsylvania.  Id. at 7.

Doe alleges in her response that Lindauer used a particular type of peer-to-peer file-sharing software ("P2P") in an effort to conceal his activities.  Resp. at 5.  She proffers the affidavit in support of Lindauer's arrest warrant, which states that FBI agents downloaded child-porn images from a P2P user later identified as Lindauer during two sessions on December 22,

2009 and January 21, 2010.  <u>Id.</u> Ex. 2 at 1.  When the agents executed search warrants at

Lindauer's Charlottesville, Virginia residence and business, he admitted during an interview that

he had "viewed child pornography over the past 10 years" which he accessed through the

Internet.  <u>Id.</u> at 3.

Doe urges that we find personal jurisdiction over Lindauer for the identical reasons she

cited about the other two defendants.  She contends that Lindauer had "sufficient minimum

contacts with Pennsylvania because he intentionally conspired to solicit, receive, and trade

images in Pennsylvania, all of which depict [Doe's] abuse."  Resp. at 9.  She repeats her view

that because those images are illegal, Lindauer could not have obtained them "except by seeking

them out[] and becoming trusted by someone who illegally possessed them.  And because [they]

originated with Mancuso, a Pennsylvania resident, [d]efendant Lindauer could not have obtained

them without contacting, and becoming trusted by, that Pennsylvania resident or one of his co-

conspirators who possessed the images."  <u>Id.</u> at 13.  She urges application of the <u>Zippo</u> test

because Lindauer established minimum contacts with Pennsylvania when he "interacted with an

anonymous, geographically dispersed online community for the purpose of trading child

pornography and solicited, received, and downloaded illegal and privacy-invading images of"

Doe, <u>id.</u> at 20, and this illegal online marketplace was essentially commercial in nature.  <u>Id.</u> at

18.

She also argues that we have personal jurisdiction through the <u>Calder</u> "effects" test

because she alleges "a substantial nexus with the Commonwealth of Pennsylvania" since the

images were created in Pennsylvania by a Pennsylvania resident, depicting the abuse of a

Pennsylvania-based plaintiff, and were originally placed on the Internet by that Pennsylvania

resident.  <u>Id.</u> at 26.  "[G]iven that all images of [Doe] originated in Pennsylvania. . . Lindauer

could not have obtained [them] without coming into contact with and becoming trusted by the Pennsylvania resident who placed the images on the Internet or one of his co-conspirators." Id.[10]

We have no personal jurisdiction over Lindauer.   Again, there is no evidence of contacts between Lindauer and the Commonwealth of Pennsylvania under any accepted test for contacts with the forum.  Doe does not allege that Lindauer purposely availed himself of this forum by accessing child-porn sites in Pennsylvania.  She can point to no specific activity through which he expressly aimed any action toward this Commonwealth.

As for the Zippo sliding scale, it is unclear how it applied to a peer-to-peer network, which is a decentralized and distributed communications architecture that requires a user to download file-sharing software in order to participate.  Courts that have applied the Zippo standard to peer-to-peer file-sharing networks have done so when the users on such a network are within the forum state.  See, e.g., Northbrook Digital, LLC v. Vendio Services, Inc., 625 F. Supp. 2d 728, 751-52 (D. Minn. 2008) (finding the Zippo standard applies to the level of interactivity required when in-forum users download file-sharing software); see also Virgin Records America, Inc. v. Does 1-35, 2006 WL 1028956 at *4 (D.D.C. Apr. 18, 2006).  But that is not the case here.  Further, there are no specific allegations that Lindauer's image exchanges concerning Doe (even assuming the barter approached the level of commercial activity) ever glanced into the Commonwealth of Pennsylvania.

Turning to co-conspirator jurisdiction, while it is possible that Lindauer and Mancuso had dealings in some period before Mancuso's 2003 arrest, that conjecture alone cannot create firm grounds for co-conspirator jurisdiction.  Doe has not alleged any facts with sufficient

---

[10] Doe again offers the multi-factor "totality of the circumstances" test for personal jurisdiction devised in Ralsky, 203 F. Supp. 2d 601, which we decline to adopt.

particularity for us to find that Lindauer, in Charlottesville, Virginia, conspired with Mancuso or anyone else in the Commonwealth of Pennsylvania.

      D.    <u>Jurisdictional Discovery</u>

Doe also requests that she be permitted to conduct jurisdictional discovery.

We may permit jurisdictional discovery under certain circumstances and at our discretion. In general, jurisdictional discovery relates to corporate defendants and arises from an inquiry as to whether they are "doing business" in the state. <u>Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n</u>, 107 F.3d 1026, 1042 (3d Cir. 1997). For example, in <u>Toys "R" Us</u> our Court of Appeals found that the district court erred in denying plaintiff's request for jurisdictional discovery because the record before the lower court contained sufficient specific allegations and admissions of infringement to support the request for jurisdictional discovery into the extent to which those activities were aimed toward the forum, "an essential element of the personal jurisdiction calculus." <u>Toys "R" Us</u>, 318 F.3d at 457.

When the defendant is a natural person, the presumption in favor of discovery necessarily weakens. <u>Massachusetts School of Law</u>, 107 F.3d at 1042 (citing <u>Shaw v. Boyd</u>, 658 F. Supp. 89, 90 n. 1 (E.D.Pa.1987) (Newcomer, J.)). But in any case, "[i]f the plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." <u>Toys "R" Us</u>, 318 F.3d at 456 (modification in original) (quoting <u>Mellon Bank (East) PSFS, Nat. Ass'n v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992). Where the plaintiff makes "this required threshold showing, courts within this Circuit have sustained the right to conduct discovery before the district court dismisses for lack of personal

jurisdiction." Id. at 456.

But Doe here has not presented factual allegations with such particularity with respect to these three defendants' purported contacts with the Commonwealth of Pennsylvania. Indeed, as to all three defendants, it is hard to imagine any germane discovery that would enlighten us more than their admissions to the Government's respective recitations of the factual basis for their guilty pleas. She has not made the requisite threshold showing to sustain her right to conduct jurisdictional discovery over these three individuals.

III.    **Conclusion**

After a careful canvass of the record, we will grant defendants Joachim, Finkelstein and Lindauer's motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and deny Doe's request for jurisdictional discovery.

                              BY THE COURT:

                              /S/ STEWART DALZELL, J.