IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, f/k/a MASHA ALLEN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALAN HESKETH, et al. | : | NO. 13-4935 |

<u>MEMORANDUM</u>

Dalzell, J.                                                                 January 9, 2015

We here consider defendant Matthew Alan Mancuso's motion to dismiss plaintiff Jane

Doe's complaint because, he contends, the restitution he paid to Doe in accordance with his

criminal sentence bars a second recovery for Doe in a civil suit under another statute.  Unlike

actions in which child-porn victims have successfully sought restitution from so-called non-

contact tortfeasors who possessed but did not create the illicit images, the plaintiff here seeks

restitution from the originator of those images at whose hands she suffered horrific abuse.  But

this case is unusual because plaintiff <u>has</u> received compensation for her injuries under a criminal

statutory scheme intended for that very purpose and now seeks to recover from the selfsame

defendant under a civil statute.

For the reasons set forth below, we will grant defendant's motion and dismiss Doe's

complaint against this defendant.  Defendant Mancuso also seeks relief from a default judgment

in response to the Clerk of Court's entry of default for failure to answer or otherwise defend

against the plaintiff's complaint, and we will grant that motion as well.

## I.      <u>Factual and Procedural Background</u>

### A.      <u>The Parties</u>

Plaintiff Jane Doe seeks statutory redress under 18 U.S.C. § 2255 for her victimization in

the child-porn trade when she was a minor.  From the age of five Doe was filmed being

repeatedly raped and sexually abused by defendant Mancuso, her then-adoptive father, who

subsequently distributed those images over the Internet.  First Amended Complaint ("FAC") at 2.

Most of these acts took place in Mancuso's home in the Commonwealth of Pennsylvania, but

others were filmed during their annual trips to Disney World -- including a widely distributed

series through which Doe became known as "Disney World Girl."  Id. at ¶ 12.  Mancuso

distributed some two hundred images of Doe in secret online chatrooms in exchange for pictures

and videos of other children being sexually abused.  Id. at ¶ 13.

On September 25, 2003, Mancuso pled guilty to a single count of violating 18 U.S.C. §

2251(a), which imposes federal penalties for the sexual exploitation of children.[1]  Id. at ¶ 27;

Sent. Tr. 2/5/2004 at 3, 17.  On January 7, 2004, Judge Terrence F. McVerry of the Western

District of Pennsylvania sentenced Mancuso to a term of 188 months' imprisonment to be

followed by three years' supervised release.  MTD at 3.  Additionally, according to the terms of

his plea agreement as set forth in correspondence between United States Attorney Mary Beth

Buchanan and Mancuso's attorney, Mancuso also "acknowledge[d] his responsibility" for

possessing the graphic pictures of Doe in violation of 18 U.S.C. § 2252(a)(4)(B) and

---

[1] 18 U.S.C. § 2251(a) provides in relevant part that

> Any person who . . . coerces any minor to engage in, . . . or who
> transports any minor . . . with the intent that such minor engage
> in[]any sexually explicit conduct for the purpose of producing any
> visual depiction of such conduct or for the purpose of transmitting
> a live visual depiction of such conduct, shall be [fined under this
> title and imprisoned not less than 15 years], if such person knows
> or has reason to know that such visual depiction will be transported
> or transmitted using any means or facility of interstate or foreign
> commerce or in or affecting interstate or foreign commerce or
> mailed, if that visual depiction was produced or transmitted using
> materials that have been mailed, shipped, or transported in or
> affecting interstate or foreign commerce by any means, including
> by computer[.]

"stipulate[d] that the conduct charged in that count may be considered by. . . the District Court in imposing sentence." Resp. in Opp., Ex. A. More to the point of our inquiry here, Mancuso also agreed to "pay mandatory restitution under . . . 18 U.S.C. §§3663, 3663A and 3664, to [Doe and]. . . . establish, and fully fund, a trust fund for the benefit of [Doe] in this case in the amount of $200,000 . . . . [and] immediately notify the court and the United States Attorney of any improvement in his economic circumstances that might increase his ability to pay restitution and that occurs from the date of this agreement until the completion of his sentence, including any term of supervised release." Id.

The trust was funded before Mancuso's February 5, 2004 sentencing hearing. Sent. Tr. 2/5/2004 at 19.

### B.   **Procedural History**

Doe filed this lawsuit on August 23, 2013 under 18 U.S.C. § 2255, a statute known as "Masha's Law" and named after this very plaintiff. FAC at 2. The statute provides in relevant part:

> Any person who, while a minor, was a victim of a violation of [a predicate offense] and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

18 U.S.C. § 2255(a). Any plaintiff who establishes a claim under Masha's Law may recover a minimum of $150,000 in damages "[a]s a punitive deterrent to such crimes[] and in recognition of both the magnitude of the damages resulting to the victim and the difficulty of precisely calculating the amount of such damages." FAC at 5.

Doe originally sought to sue a class of defendants defined by their possession of her illicit image.  The United States Department of Justice ("DOJ") identified each of these defendants as having "received, possessed, and/or distributed one or more of the illicit images" Mancuso created of Doe and each defendant was convicted of a predicate offense to 18 U.S.C. § 2255.  Id. at ¶ 15.  Under the DOJ's Victim Notification System, Doe learned the names of each defendant "who illegally possessed and/or distributed" one or more of the images of her that Mancuso created of her.  Id. at ¶ 16.  To date, Doe has received over 2,000 such notifications.  Id.  Doe sought "at least" the $150,000 in statutory minimum damages from each member of the putative class.  Id.

Doe alleged that as part of the conduct of his offense, Mancuso communicated with other possessors and distributors of child pornography through the Internet, where he used fictitious names to "advertise, distribute, and receive illegal images, including images of" Doe.  Id. at ¶ 28. She alleged that Mancuso and others "conspired with each other, and with members of the class, to share and distribute these and other illegal child-abuse images, largely by means of the so-called 'darknet,' a collection of secure websites, online chatrooms, bulletin-board sites, and peer-to-peer file-sharing computer networks that communicate via the Internet but are specifically designed to conceal the participants' personal identifying information."  Id. at 4.  She further alleged that, because the images are illegal, Mancuso and the other onetime defendants "operated under an agreement to protect each other's anonymity [by] communicating with each other remotely under fictitious usernames."  Id.

Because these images continue to circulate and as a result Doe suffers grave deprivations of her privacy as a result, she changed her name and took steps to shield her address and personal information before filing this lawsuit.  In January of 2014 we granted her unopposed motion to

proceed under a pseudonym.

On February 4, 2014, Doe filed her first amended complaint against thirteen named defendants whom she sued individually and as representatives of a defendant Rule 23(b)(3) class under 18 U.S.C. § 2255(a).[2]   On April 25, 2014, we granted motions to dismiss that three defendants filed over whom we concluded we did not have personal jurisdiction, <u>Doe v. Hesketh</u>, 15 F. Supp. 3d 586 (E.D. Pa. 2014).   On April 30, 2014, we ordered the remaining parties to show cause why we should not proceed in this matter only with defendants from Pennsylvania, the forum state.   On September 15, 2014, we granted motions to dismiss filed by the remaining non-forum state defendants and, as to Mancuso, who had as yet not responded, we held that we would dismiss him if Doe failed to request a default judgment.   On September 22, 2014, the same day that Mancuso's attorney filed a <u>pro</u> <u>hac</u> <u>vice</u> motion to enter his first appearance on Mancuso's behalf, Doe filed an application for entry of default against Mancuso.   The next day the Clerk of Court entered default against Mancuso for failure to plead or otherwise defend.

The following day Mancuso filed a motion for relief from default judgment and a motion to dismiss for failure to state a claim.

## II.   <u>Legal Standard</u>

### A.   <u>Motion to Dismiss</u>

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that a plaintiff has failed to state a claim for relief, <u>see</u> Fed. R. Civ. P. 12(b)(6); <u>see also</u>, <u>e.g.</u>, <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005).   A Rule 12(b)(6) motion tests

---

[2]  Specifically, she defined the putative class as "all persons who (1) have been convicted of one or more federal child pornography offenses listed in Masha's Law as predicate offenses for a civil action, and (2) have been identified by federal law enforcement officials (and/or by the Child Victim Identification Program of the National Center for Missing and Exploited Children) as having received, possessed, and/or distributed one or more illegal child sexual abuse images of Plaintiff."  FAC at ¶ 60.

the sufficiency of the allegations contained in the complaint and "[t]he question, then, is whether the facts alleged in the complaint, even if true, fail to support the claim." Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (internal citation and quotation marks omitted). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), in order to survive a Rule 12(b)(6) motion "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'," Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678.

Our Court of Appeals obliges district courts post-Twombly and Iqbal considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) to engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

All well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiff and all inferences must be drawn in her favor. See McTernan v. City of York, PA, 577 F.3d 521, 526 (3d Cir. 2009) (internal quotation marks omitted). To survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact)." Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Twombly, 550 U.S. at 555).

To decide a motion to dismiss, we generally consider only the allegations contained in

the complaint, exhibits attached to the complaint, and matters of public record.  Pension Benefit

Guar. Corp. v. White Consol. Indus. Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Wright

and Miller, Federal Practice and Procedure, § 1357 (2d ed. 1990)).  A district court ruling on a

motion to dismiss may not consider matters extraneous to the pleadings.  In re Burlington Coat

Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  If on a motion under Rule 12(b)(6) a

party presents matters outside the pleadings to the court, and the court does not exclude them, the

motion must be treated as one for summary judgment under Rule 56 "and the court must give all

parties a reasonable opportunity to present pertinent evidence."  Borough of Moosic v. Darwin

Nat. Assur. Co, 556 F. App'x 92, 95 (3d Cir. 2014); see also Fed. R. Civ. P. 12(d).  "Otherwise,

weighing the new factual assertions against the facts pleaded in the complaint would invite

courts to consider facts and evidence that have not been tested in formal discovery."  Guidotti v.

Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 775 n.6 (3d Cir. 2013) (quoting Pfeil v.

State St. Bank and Trust Co., 671 F.3d 585, 594 (6th Cir. 2012) (internal quotations and

alterations omitted)).

"However, an exception to the general rule is that a document integral to or explicitly

relied upon in the complaint may be considered without converting the motion to dismiss into

one for summary judgment."  In re Burlington Coat Factory, 114 F.3d at 1426 (internal quotation

marks, citation and alterations omitted).

> The reason that a court must convert a motion to dismiss to a
> summary judgment motion if it considers extraneous evidence
> submitted by the defense is to afford the plaintiff an opportunity to
> respond. When a complaint relies on a document, however, the
> plaintiff obviously is on notice of the contents of the document,
> and the need for a chance to refute evidence is greatly diminished.

Pension Benefit Guar. Corp., 998 F.2d at 1196-97 (internal citation omitted).

7

**B.**     **Motion For Relief From Default Judgment**

The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b).  Fed. R. Civ. P. 55(c).  Rule 60(b)(5) provides that upon motion the Court may relieve a party from a final judgment, order, or proceeding, inter alia, because "the judgment has been satisfied, released or discharged."

The standard for setting aside a default is less exacting than that for setting aside a default judgment, Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 656 (3d Cir. 1982), and requires only that the moving party provide an explanation for the default or give reasons why vacation of the default would serve the interests of justice.  10C Wright and Miller, Federal Practice and Procedure, §2696 (3d ed. 2013).  Any of the reasons sufficient to justify the vacation of a default judgment under Rule 60(b) will normally justify relief from an entry of default and in various situations such a default may be set aside for reasons that would not be enough to open a default judgment.  Id.

Generally, default judgments are not favored and it is well-established that doubtful cases ought to be resolved in favor of the party moving to set aside default judgment in order to decide the case on its merits.  United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984).  We may set aside a default judgment for the reasons set forth under Federal Rule 60 (b), including "excusable neglect" or "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(1), (b)(6).  In determining whether to set aside a default we must consider whether (1) the plaintiff will be prejudiced, (2) the defendant has a meritorious defense, and (3) the default was the result of the defendant's culpable conduct.  $55,518.05 in U.S. Currency, 728 F.2d at 195.

III.   <u>Discussion</u>

    A.    <u>**Mancuso's Motion To Dismiss Based On His Guilty Plea And Sentencing**</u>

In his motion to dismiss, Mancuso argues that the federal statutes under which he pled guilty define mandatory restitution to provide for the "full" amount of the victim's losses.  MTD at 3.  <u>See</u> 18 U.S.C. § 2259(b)(3)(A)-(F).  He further contends that Section 3664(j)(2)(A) prevents plaintiffs such as Doe from a double recovery by providing that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in any Federal civil proceeding."  18 U.S.C. § 3664(j)(2)(A).

"[I]t is perfectly clear," Mancuso contends, "that where the ordered restitution is paid, as here, that payment represents a satisfaction and bar to the recovery of any amount later sought to be recovered, as otherwise the victim (Doe, here) would get a double recovery of the 'full' claim for damages represented by the Restitution Order."  MTD at 4.  As a result, he asks that we dismiss Doe's complaint against him.  He observes that his reliance upon his sentence brings before us facts outside the present record, but nonetheless asks that we take judicial notice of adjudicative facts from his sentencing hearing -- that is, the Order of Restitution and his compliance therewith -- rather than convert his motion to dismiss into one for summary judgment.  <u>Id.</u> at 2.

Doe counters that the recovery she seeks is neither a double recovery nor compensation for the same loss.  She argues that Mancuso's reliance upon a full discharge under Section 2259 is misplaced when the plea agreement explicitly provided that the restitution was to be paid pursuant to Sections 3663, 3663A and 3664 -- statutes that she contends do not provide that restitution moots a civil claim by a victim.  Resp. in Opp. at 13-14.  And even if her restitution

was based on Section 2259, she argues, that statute provides for restitution "in addition to any other civil or criminal penalty authorized by law."  Id. at 15; see also 18 U.S.C. § 2259.

Doe also argues that because Mancuso's restitution was part of his sentence for violating Section 2251(a), it is unrelated to the claim she presses here -- namely, his violation of Section 2252(a)(4)(B), the child pornography possession statute.  Id. at 16.  She argues that the losses she suffered as a result of Mancuso's sexual abuse "are entirely different" from those she suffered due to his possession and distribution of her image.  Id.  Therefore, she contends, she is not seeking compensation for the same loss.

Third, Doe argues that Mancuso's possession of pornographic images of her in violation of 18 U.S.C. § 2252(a)(4)(B) -- which he conceded -- is a predicate felony for the purposes of Masha's Law.  Resp. in Opp. at 10-11.  Doe contends she has suffered injury as a result of Mancuso's possession and distribution of those images, "including but not limited to expenses for past and future therapy and medical treatment; diminished earning capacity and lost wages; and costs associated with keeping her identity private."  Id. at 11-12; see also FAC at ¶ 76.  She contests Mancuso's assertion that she has been fully compensated "for the years of unspeakable sexual abuse and unending psychological injury resulting from his creation and dissemination of images depicting that abuse."  Id. at 12.  In support of her argument for more compensation, she points to the plea agreement in which Mancuso agreed to "immediately notify the court and the United States Attorney of any improvement in his economic circumstances that might increase his ability to pay restitution."  Id. at Ex. A.

### B.   Threshold Issue: Motion To Dismiss Or For Summary Judgment?

As a threshold issue, Doe argues that Mancuso's motion is procedurally defective because it relies on matters outside the pleadings related to his criminal sentence, and therefore is

not properly a motion to dismiss.  Id. at 16.  She contends that "[w]hether the restitution ordered

in Mancuso's criminal sentence should be coextensive with, or can satisfy fully, the civil

damages [Doe] claims in this action involves the adjudication of facts that may not be judicially

noticed."  Id. at 18.  She urges that we not take judicial notice of the sentencing court's purpose

in imposing sentence, the "facts surrounding the negotiations between Mancuso and the

Government" about the restitution, or "the facts surrounding the purpose of the [t]rust, the

amount, or the scope of the injuries, if any, the [t]rust was intended to redress."  Id. at 18-19.

Nonetheless, Doe herself submits with her response in opposition detailed records of

Mancuso's criminal proceeding, including the Indictment, his Change of Plea document, and his

plea agreement with the then-United States Attorney for the Western District of Pennsylvania.

Id. at Ex. A.

Obviously, we must decide precisely what legal consequences follow from Judge

McVerry's criminal sentence.  Nonetheless, it is well-established that we may consider matters of

public record when deciding a motion to dismiss.  Indictments, change of plea hearings, and

sentencing memoranda are quintessential matters of public record, and the more so when, as

here, they are all in plaintiff's possession.  See Temple University v. Salla Bros., Inc., 656 F.

Supp. 97, 108 (E.D.Pa. 1986) (Hannum, J.) (describing court documents including change of

plea hearings and sentencing memoranda in plaintiff's possession as "a matter of public record").

Certainly, sentencing hearings held in open court are indisputably events of public record, as are

the transcripts of those proceedings.  See, e.g., Kellinger v. City of Englewood, 2013 WL

3443002 at *1 (D.N.J. July 9, 2013).  Further, Mancuso's guilty plea and sentencing are

authentic court records on which Doe herself relied in her complaint (stating that "[i]n 2003,

[Mancuso] pleaded guilty in federal court to possession and distribution of child pornography

and was sentenced to 15 years in federal prison," FAC at ¶ 27).  Palpably, we may consider both

when we analyze Mancuso's motion to dismiss.

Finally, Federal Rule of Evidence 201 permits us to take judicial notice of "a fact that is

not subject to reasonable dispute because it can be accurately and readily determined from

sources whose accuracy cannot reasonably be questioned," and we may do so on our own at any

stage of the proceeding.  Fed. R. Evid. 201(b)(2), (c)(1) and (d).  We therefore may take judicial

notice of the content of Mancuso's February 5, 2004 sentencing hearing before Judge McVerry.

Thus, although the parties have both put before us matters outside the pleadings that we

will not exclude, we need not treat Mancuso's motion as one for summary judgment, but we will

dispose of it, as he filed it, as a motion to dismiss.

### C.  **The Statutory Framework**

At Mancuso's February 5, 2004 sentencing hearing, Judge McVerry stated,

> Restitution in this matter is mandatory, pursuant to Title 18, United
> States Code, Sections 2259(a) through 3663, 3663[A] and 3664.
> In order to meet your restitution obligation, the Court has the
> understanding that you have fully funded a trust account in the
> amount of $200,000 for the benefit of the child victim in this case.

Sent. Tr. 2/5/2004 at 19.  Judge McVerry added that his sentence "adequately conforms with the

statutory and sentencing guideline requirements."  Id. at 20.

Over the past forty years, restitution in criminal cases has been expanded by statute to

compensate an ever-increasing range of harms "causing it to go beyond the reimbursement of

specific losses and begin to resemble civil damages."  Cortney E. Lollar, Child Pornography and

the Restitution Revolution, 103 J. Crim. L. & Criminology 343, 350 (2013).  In 1982, Congress

incorporated restitution payments into sentencings when it adopted the Victim and Witness

Protection Act, now codified at 18 U.S.C. § 3663, which allows judges discretion to award

restitution as a separate component of sentencing.  In 1994, Congress expanded victims' rights to receive restitution when it adopted the mandatory restitution provision of the Violence Against Women Act, codified at Section 2259.   And in 1996, the Mandatory Victim Restitution Act ("MVRA" or "the Mandatory Restitution Act") dictated restitution for a broad range of violent and property crimes.  Jennifer A.L. Sheldon-Sherman, Rethinking Restitution in Cases of Child Pornography Possession, 17 Lewis & Clark L. Rev. 215, 224-25 (2013).  Then, in 2006, Congress expanded the civil remedy for victims of child pornography distribution by adopting Masha's Law, which increased to $150,000 from $50,000 the minimum statutory damages available to victims who suffered "personal injury" at the hands of those who produce, distribute or possess child pornography.   See James R. Marsh, Masha's Law:  A Federal Civil Remedy for Child Pornography Victims, 61 Syracuse L. Rev 459, 461 (2011).

As a result of this ever-more expansive view of compensable harms, the term "restitution" -- once confined to equitable remedies for disgorgement of unjust enrichment -- has increasingly become a vehicle for damage awards that make crime victims whole.

Section 2259 provides that the order of restitution for sex crimes, "[n]otwithstanding Section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, . . . shall direct the defendant to pay the victim. . . the full amount of the victim's losses as determined by the court[.]"  18 U.S.C. § 2259(a), (b)(1).  The statute defines the "full amount of the victim's losses" to include

> any costs incurred by the victim for medical services relating to physical, psychiatric, or psychological care;  physical and occupational therapy or rehabilitation;  necessary transportation, temporary housing, and child care expenses;  lost income; attorneys' fees, as well as other costs incurred; and any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3)(A)-(F).  The statute further provides that a court "may not decline to

issue an order under this section because of the economic circumstances of the defendant" or "the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source."  18 U.S.C. § 2259(b)(4).  Until February of 2009, this statute was primarily directed at child pornography producers, rather than possessors; but since then it has become the principal vehicle through which child pornography victims may seek restitution for the illicit distribution of their images.  Jennifer A.L. Sheldon-Sherman, Rethinking Restitution, 17 Lewis & Clark L. Rev. at 217.

An order of restitution under Section 3663, the Victim and Witness Protection Act ("VWPA" or "Victim Protection Act") obliges a court to consider "the amount of the loss sustained by each victim as a result of the offense," "the financial resources of the defendant, the financial needs and earning ability of the defendant. . . and such other factors as the court deems appropriate."  18 U.S.C. § 3663(a)(1)(B)(i)(I) and (II).  The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement.  18 U.S.C. § 3663(a)(3).  As our Court of Appeals has explained, Congress "expected that entitlement to restitution could be readily determined by the sentencing judge based upon the evidence he had heard during the trial of the criminal case or learned in the course of determining whether to accept a plea and what an appropriate sentence would be."  United States v. Kones, 77 F.3d 66, 69 (3d Cir. 1996).  "The kind of case that Congress had in mind was one in which liability is clear from the information provided by the [G]overnment and the defendant and all the sentencing court has to do is calculate damages."  Id.

The Mandatory Restitution Act, codified at 18 U.S.C. § 3663A in 1996, augmented and partially superseded the VWPA.  It provides that in the case of an offense resulting in bodily injury to a victim, the defendant shall

> pay an amount equal to the cost of necessary medical and related
> professional services and devices relating to physical, psychiatric,
> and psychological care, including nonmedical care and treatment
> rendered in accordance with a method of healing recognized by the
> law of the place of treatment; pay an amount equal to the cost of
> necessary physical and occupational therapy and rehabilitation;
> and reimburse the victim for income lost by such victim as a result
> of such offense[.]

18 U.S.C. § 3663A(b)(2)(A)-(C).  If the MVRA applies to a defendant, the court must order restitution to each victim in the full amount of that victim's losses, and the court cannot consider the defendant's economic circumstances.  See United States v. Edwards, 162 F.3d 87 (3d Cir. 1998).  "The purpose of the statute is, to the extent possible, to make victims whole, to fully compensate victims for their losses, and to restore victims to their original state of well-being." United States v. Quillen, 335 F.3d 219, 222 (3d Cir. 2003) (internal citation and quotation marks omitted).

Section 3664 provides the mechanism for enforcing orders of restitution under this section.  It also mandates that "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution."  18 U.S.C. § 3664 (f)(1)(B).

Masha's Law, codified at 18 U.S.C. § 2255, provides that a minor who is the victim of a crime of sexual exploitation "who suffers personal injury as a result of such violation . . . shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee."  The statute further provides that any such person "shall be deemed to have sustained damages of no less than $150,000."  18 U.S.C. § 2255(a).  Despite its now-higher statutory recovery and provision for attorney's fees, this statute limits recovery to the statutory minimum or "actual damages such person sustains" and sets a relatively short statute of limitations -- ten years after the right of action first accrues or, in the case of a minor, not later

than three years after reaching majority.  18 U.S.C. § 2255(b).  One commentator observed that child pornography victims have filed few actions under this statute, perhaps because "victims are currently receiving far greater compensation by seeking restitution through criminal cases than they would under Masha's Law."  Lollar, <u>Child Pornography and the Restitution Revolution</u>, 103 J. Crim. L. & Criminology at 386.

    **D.**      **<u>Applicable Law</u>**

      Doe offers three arguments as to why she believes we should permit her civil action against Mancuso to go forward despite the criminal restitution to her that Judge McVerry imposed.  She contends that the Mandatory Restitution Act does not bar a civil suit and Section 2259 explicitly provides for restitution "in addition to any other civil or criminal penalty authorized by law."  She also argues that the $200,000 trust fund does not compensate her for Mancuso's possession of her pornographic images in violation of 18 U.S.C. § 2252(a)(4)(B) -- a predicate felony for the purposes of Masha's Law.  Lastly, she argues that her civil claims are based on different losses than those for which Mancuso made restitution under his criminal sentence.

      Turning to Doe's first argument, our Court of Appeals has not considered whether a plaintiff who has received court-ordered restitution may subsequently seek further recovery for personal injury in a civil suit.  But other federal appellate courts that have examined the interplay of criminal restitution and civil suits or settlements have not allowed double recovery.  District courts generally disregard pending civil judgments when imposing restitution in criminal cases, but, once restitution has been imposed, several Courts of Appeals have concluded that the Mandatory Restitution Act does <u>not</u> permit victims to seek further recovery through a subsequent civil suit.  Thus, where a claimant had received no payments in satisfaction of a civil judgment,

the Eighth Circuit held that after the defendants began making payments on that judgment they could seek a reduction of the MVRA restitution payments to offset the amounts paid under the civil judgment.  United States v. Louper-Morris, 672 F.3d 539, 566-67 (8th Cir. 2012); see also United States v. Manzer, 69 F.3d 222, 230 (8th Cir. 1995) (finding that the VWPA, the Mandatory Restitution Act's predecessor, does not allow double recovery for the same loss through both a restitution order and a civil suit).

The Ninth Circuit, too, interpreted Section 3664's prohibition against considering other compensation offsets in restitution orders.  In United States v. Crawford, 169 F.3d 590 (9th Cir. 1999), the appellant argued that his payment of $15,000 through his insurance to the victim's family entitled him to an offset of the court-ordered restitution under the VWPA.  The Court held that, under Section 3664(f)(1)(B), "insurance settlements are excluded in the initial computation of the amount of restitution owed [but] once that total amount is determined, the defendant is entitled to have the amount of restitution reduced by any amount later recovered by the victim as compensatory damages for the same loss."  Crawford, 169 F.3d at 593.

Courts reason that a civil judgment imposed prior to a restitution order may subsequently be changed or remain unpaid, thereby depriving the victim of the full compensation to which she is statutorily entitled.  Courts also frown on parties' attempts to contract around the criminal justice system with a civil settlement, when court-ordered restitution is meant to be punitive and deter wrongdoing.  See United States v. Bearden, 274 F.3d 1031 (6th Cir. 2001) (a settlement between the criminal defendant and his victim does not affect the district court's power to impose a restitution order at sentencing); accord United States v. Gallant, 537 F.3d 1202 (10th Cir. 2008).   Nonetheless, a restitution order must credit payments the defendant made to the victim for the losses stemming from his offense.  United States v. Malone, 747 F.3d 481 (7th Cir.

17

2014) (citing Section 3664(j)(2)).[3]

Our Court of Appeals has described restitution as "combin[ing] features of both criminal and civil penalties, as it is, on the one hand, a restoration to the victim by defendant of ill-gotten gains, while it is, at the same time, an aspect of a criminal sentence."  United States v. Leahy, 438 F.3d 328, 333 (3d Cir. 2006) (en banc).  But when restitution is ordered pursuant to Sections 3663 (the VWPA) and 3663A (the MVRA), our Court of Appeals has concluded its purpose is primarily compensatory.  Thus, in United States v. Fumo, 655 F.3d 288, 320 (3d Cir. 2011), our Court of Appeals found that restitution ordered under the Victim Protection Act, as amended by the Mandatory Restitution Act, is "designed to compensate victims for their losses, rather than to serve retributive or deterrent purposes."  The Court concluded that restitution under the VWPA "has a punitive component," but its "primary purpose" is ensuring that wrongdoers make their victims whole.  Id. at 321.  Similarly, "[t]he MVRA requires restitution to be ordered for the 'full amount' of each victim's loss.  The proper amount of restitution is the amount wrongfully taken by the defendant."  United States v. Bryant, 655 F.3d 232, 254 (3d Cir. 2011) (quoting 18 U.S.C. § 3663(f)(1)(A)) (internal quotation omitted).

To be sure, our Court of Appeals has not considered facts cognate to those here.  But we find the reasoning of other Courts of Appeals persuasive concerning the consequences of Judge McVerry's sentence ordering Mancuso to pay restitution pursuant to both the Victim Protection Act and the Mandatory Restitution Act.  We conclude that the court-ordered restitution that Judge McVerry imposed here was intended to make Doe whole.  Judge McVerry's reliance on

---

[3] Section 3664(j)(2)(A), a clawback provision, provides in pertinent part that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in any Federal civil proceeding."

both statutes therefore bars a subsequent civil claim under Masha's Law.[4]  Accordingly, we find

that the payment of Mancuso's court-ordered restitution to Doe does not permit her to seek

additional recovery under Section 2255.

Doe also argues that the losses for which she seeks compensation under Section 2255

differ from those for which Mancuso was ordered to compensate her at the time of his sentencing

and that the $200,000 trust fund compensates her only for his sexual depredations, not for the

possession and distribution of her illicit images for which he also accepted responsibility.  And

she points to the plea agreement in which Mancuso agreed to "immediately notify the court and

the United States Attorney of any improvement in his economic circumstances that might

increase his ability to pay restitution."  Resp. in Opp. at Ex. A.

As a general proposition, restitution orders are yoked to the offenses for which a

defendant is convicted unless such orders result from a plea agreement in which the parties agree

to restitution for losses based on conduct beyond the counts of conviction.  Because Mancuso

pled guilty, we must look at the plea agreement, the plea colloquy and any other statements by

the parties to determine the scope of the offense of conviction for the purposes of restitution.

United States v. Akande, 200 F.3d 136, 142 (3d Cir. 1999) (cited with approval by United States

v. Elson, 577 F.3d 713, 723 (6th Cir. 2009)) (internal quotation marks omitted).

Mancuso's Change of Plea document and his plea agreement show that he pled guilty to

Count One of the Indictment that he coerced a minor to engage in sexually explicit conduct for

the purpose of producing visual depictions of that conduct.  Resp. in Opp., Exs. A and D.  Under

the terms of the plea agreement, he also "acknowledge[d] his responsibility for the conduct

charged in Count Two" -- the possession of Doe's illicit images -- "and stipulate[d] that the

---

[4] Indeed, were Doe to prevail in a civil suit, the clawback provision would entitle Mancuso to petition the court for an equal amount to be decreased in the restitution amount already paid.

conduct charged in that count may be considered by the Probation Office or by the District Court in imposing sentence." Id. at Exs. A and D.  The plea agreement further provided that the United States Attorney retained the right to advise the court at sentencing of "the full nature and extent" of Mancuso's involvement "in the offenses charged in the Indictment." Id. at Ex. A.  Finally, the Government and Mancuso agreed to mandatory restitution under Sections 3663, 3663A and 3664 in the form of the trust funded with a res of $200,000.

At sentencing, Judge McVerry imposed the agreed-upon restitution and prison term. Sent. Tr. 2/5/2004 at 19.

Mancuso's court-ordered restitution thus contemplated not only the charge to which he pled guilty but also the uncharged conduct since the parties agreed that the district court could consider such conduct when imposing sentence.  Although Doe experiences an injury distinct from Mancuso's sexual abuse whenever others possess her illicit image, the record of Mancuso's criminal proceeding confirms that, as to Mancuso, Doe has already received compensation for that loss or injury.  Accordingly, she may not pursue a civil suit against Mancuso for his possession of her image.

Finally, Doe urges that we permit her suit to go forward because the injuries she suffered as a result of Mancuso's possession and distribution of her images include expenses for past and future therapy and medical treatment, diminished earning capacity and lost wages, and costs associated with keeping her identity private.   She also relies on the plea agreement in which Mancuso agreed to "immediately notify the court and the United States Attorney of any improvement in his economic circumstances that might increase his ability to pay restitution," Resp. in Opp. at Ex. A, to argue that the $200,000 trust fund fails to compensate her fully.

In finding that Doe's argument fails, we are guided by the plain language of 18 U.S.C. §

2259(a), another statutory provision on which Judge McVerry relied at Mancuso's sentencing.

See Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 367 (3d Cir. 2011).  That

provision details restitution for the very injuries Doe claims, as "the full amount of the victim's

losses as determined by the court[.]"  18 U.S.C. § 2259(b)(1).  The statute defines the "full

amount of the victim's losses" to include

> any costs incurred by the victim for medical services relating to
> physical, psychiatric, or psychological care; physical and
> occupational therapy or rehabilitation; necessary transportation,
> temporary housing, and child care expenses; lost income;
> attorneys' fees, as well as other costs incurred; and any other losses
> suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3)(A)-(F).

The open question of whether Doe would be entitled to further restitution pursuant to the

plea agreement should Mancuso's fortunes improve and should the United States Attorney

petition Judge McVerry to alter his sentence cannot vivify her right to pursue a further civil

claim now.

### E.    Doe's motion for default

Finally, we turn to Mancuso's motion for relief from the default judgment and Doe's

opposition thereto.

It is well-established that we may exercise our discretion in setting aside an entry of

default for good cause.  10C Wright and Miller, Federal Practice and Procedure, §2696 (3d ed.

2013).   In determining whether good cause exists to set aside a default, our Court of Appeals

obliges us to consider whether (1) the plaintiff will be prejudiced, (2) the defendant has a

meritorious defense, and (3) the default was the result of the defendant's culpable conduct.[5] $55,518.05 in U.S. Currency, 728 F.2d at 195.

Mancuso argues that his motion to dismiss details why Doe's demand for damages has been satisfied and discharged pursuant to Rule 60(b)(5). He states that he could not file his motion to dismiss until his attorney was admitted on September 23, 2014, the day the Clerk of Court entered default. Accordingly, he seeks relief from that default. Mot. at 4.

Doe counters that his motion for relief is futile because he has conceded the elements of Masha's Law, entitling her to actual damages of at least $150,000. Resp. in Opp. at 2. Doe argues that Mancuso cannot show that he has a meritorious defense because his acceptance of responsibility for the uncharged Count in the Indictment is a predicate felony listed in Masha's Law. Id. at 12. She also relies on arguments that underpin her opposition to Mancuso's motion to dismiss, e.g., that his restitution order was not based on Section 2259 and therefore does not make whole her full amount of her past, present and future losses, and that the criminal statute under which he paid restitution compensates for losses different from those for which she seeks recovery here. Doe urges us not to excuse Mancuso's neglect in failing to file an appearance after he was served.

As Doe observes, the threshold question is whether the defendant has alleged facts that, if established at trial, would constitute a meritorious defense to the cause of action. Resolution Trust Corp. v. Forest Grove, Inc., 33 F.3d 284, 288 (3d Cir. 1994). As we explained at length above, we find that the $200,000 trust Mancuso created for Doe as court-ordered restitution bars any further recovery in a civil suit. This meritorious defense constitutes good cause for setting aside the default. We will therefore set aside the Clerk of Court's entry of default because

---

[5] Our Court of Appeals originally established this test in Harad v. Aetna Casualty & Surety Co., 839 F.2d 979 (3d Cir. 1988), to weigh whether to vacate a default judgment.

Mancuso's motion to dismiss supplies reasons that suffice under Rule 60(b)(5) to justify its

vacation.  See 10C Wright and Miller, Federal Practice and Procedure, §2696 (3d ed. 2013)

(requiring the moving party provide an explanation for the default).

**IV.**     **Conclusion**

For the reasons stated above, we will vacate the entry of default against Mancuso and

grant his motion to dismiss.[6]

An appropriate order follows.

BY THE COURT:

/S/ STEWART DALZELL, J.

---

[6] We stress that our granting Mancuso the relief he seeks by no means undermines the odiousness of what he did to young Doe, nor do we in any way minimize the ongoing suffering his Internet postings inflict daily upon her.  But the even-handed application of the law benefits the just even when it aids the unjust.